UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

JOSE ALFARO       )
            )
v.           )   No.  3:08-1154
            )   JUDGE CAMPBELL
UNITED STATES OF AMERICA  )

MEMORANDUM

Pending before the Court is a Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside Or

Correct Sentence (Docket Nos. 1, 4), filed by the Movant/Petitioner (hereinafter "Petitioner"),

pro se. The Government has filed a Response to the Motion To Vacate. (Docket No. 7), and the

Petitioner has filed a Reply (Docket No. 11).

The Court has reviewed the pleadings and briefs filed by both parties, the record of

Petitioner's underlying conviction, and the entire record in this case.  For the reasons set forth

below, the Court concludes that Petitioner's Motion To Vacate is DENIED, and this action is

DISMISSED.

II. Procedural and Factual Background

In the underlying criminal case, the Petitioner was charged, along with thirteen other

defendants, with involvement in a conspiracy under the Racketeer Influenced Corrupt

Organization ("RICO") statute, in violation of 18 U.S.C. § 1962(d) (Count One); assault with a

dangerous weapon in aid of racketeering activity, in violation of 18 U.S.C. § 1959(a)(3) (Count

Seven); attempted murder in aid of racketeering activity, in violation of 18 U.S.C. § 1959(a)(5)

(Count Eight); using and carrying a firearm during and in relation to a crime of violence, in

violation of 18 U.S.C. § 924(c)(1)(A) (Counts Nine, Thirteen, and Twenty-Nine); assault with a

dangerous weapon in aid of racketeering activity, in violation of 18 U.S.C. § 1959(a)(3) (Count

Ten); attempted murder in aid of racketeering activity, in violation of 18 U.S.C. § 1959(a)(5)

(Count Eleven); and witness tampering, in violation of 18 U.S.C. § 1512(a)(1)(C), (a)(3)(B), and

1512(k) (Count Twelve). (Second Superseding Indictment (Docket No. 409 in Case No. 3:07-

00005)).

Prior to trial, the Petitioner decided to enter into a plea agreement with the Government,

in which the Petitioner agreed to plead guilty to Count One, the Government agreed to dismiss

all other charges, and both sides agreed to a specific sentence.  According to counsel's

representation to the Court at the guilty plea hearing, the content of Petitioner's Petition To Enter

A Plea Of Guilty and Plea Agreement had been explained to him by counsel through a translator

prior to the hearing and had been provided to him in Spanish. (Docket No. 573 in Case No. 3:07-

00005; Transcript of Plea Hearing, at 3-4 (Docket No. 1022 in Case No. 3:07-00005)).

The Petition sets forth the nine counts charged in the Second Superseding Indictment

against the Petitioner, and lists the maximum penalty associated with each. (Docket No. 573, at

15-16 of 19).   The Plea Agreement states that Petitioner agrees to plead guilty to Count One of

the Second Superseding Indictment, which charges a RICO conspiracy, and specifies the

maximum punishment for that charge. (Id.)  The Plea Agreement sets forth several pages of facts

underlying the guilty plea, including a description of two incidents in which the Petitioner and

other MS-13 gang members fired shots at rival gang members, and fired shots at a suspected

confidential informant. (Docket No. 573, at 4-7).

The parties, through the Plea Agreement, determined the offense level and criminal

history category for the Petitioner and arrived at an applicable sentencing guideline range of 235

to 293 months of imprisonment. (Id., at 8-10).  Pursuant to Rule 11(c)(1)(C) of the Federal Rules

of Criminal Procedure, the parties then agreed to a specific sentence of 240 months of imprisonment. (Id., at 10). The parties also agreed that neither would file a direct appeal relating to the sentence of 240 months. (Id., at 12). Petitioner further agreed not to file a Section 2255 challenge regarding the agreed sentence of 240 months. (Id.)

At the subsequent sentencing hearing, the Court sentenced the Petitioner to a total term of 240 months of imprisonment in accordance with the Plea Agreement. (Docket Nos. 697, 698 in Case No. 3:07-00005). The Court advised the Petitioner of his right to appeal and that any notice of appeal had to be filed within ten days. (Transcript of Sentencing Hearing, at 10-11 (Docket No. 1025 in Case No. 3:07-00005)). The record reveals that no appeal was taken by either the Petitioner or the Government.

III. Analysis

A. The Petitioner's Claims

Petitioner contends that his conviction should be vacated because he received the ineffective assistance of counsel.

B. The Section 2255 Remedy/Evidentiary Hearing Not Required.

Section 2255 provides federal prisoners with a statutory mechanism by which to seek to have their sentence vacated, set aside or corrected.[1] The statute does not provide a remedy,

---

[1] 28 U.S.C. § 2255 states, in part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate,

3

however, for every error that may have been made in the proceedings leading to conviction. The statute contemplates constitutional errors, and violations of federal law when the error qualifies as a "fundamental defect which inherently results in a complete miscarriage of justice." Reed v. Faley, 512 U.S. 339, 114 S.Ct. 2291, 2296, 2299-2300, 129 L.Ed.2d 277 (1994); Grant v. United States, 72 F.3d 503, 505-06 (6th Cir. 1996).

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that the Court shall consider the "files, records, transcripts, and correspondence relating to the judgment under attack" in ruling on a petition or motion filed under Section 2255. In addition, where the same judge considering the Section 2255 motion also conducted the trial, he may rely on his recollections of the trial. Blanton v. United States, 94 F.3d 227, 235 (6th Cir. 1996).

An evidentiary hearing is not required if the record conclusively shows that the Petitioner is not entitled to relief. 28 U.S.C. § 2255; Rule 8 of the Rules Governing Section 2255 Proceedings For The United States District Courts; Arredondo v. United States, 178 F.3d 778, 782 (6th Cir. 1999). No hearing is required "if the petitioner's allegations 'cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" Id. (quoting Engelen v. United States, 68 F.3d 238, 240 (8th Cir. 1995)).

The Court has reviewed all the files, records, transcripts and correspondence filed in the proceeding underlying Petitioner's conviction, as well as the pleadings, briefs, and records filed by the parties in this case. The Court finds it unnecessary to hold an evidentiary hearing because these records conclusively establish that Petitioner is not entitled to relief on the issues raised.

C. Ineffective Assistance of Counsel

--------

set aside or correct the sentence.

In order to prevail on an ineffective assistance of counsel claim, the burden is on the Petitioner to show:  (1) trial counsel's performance fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for the deficiency, the outcome of the proceedings would have been different. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); Campbell v. United States, 364 F.3d 727, 730 (6th Cir. 2004).

The objective standard of reasonableness "is a highly deferential one and includes a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Campbell, 364 F.3d at 730 (quoting Mason v. Mitchell, 320 F.3d 604, 616-17 (6th Cir. 2003).  A reasonable probability is a probability sufficient to undermine confidence in the outcome. Strickland, 466 S.Ct. at 694; Ivory v. Jackson, 509 F.3d 284, 294 (6th Cir. 2007).

As the Supreme Court has explained, a court need not determine whether counsel's performance was deficient before examining whether prejudice resulted from the alleged deficiencies. Strickland, 466 S.Ct. at 697; Ivory, 509 F.3d at 294.  "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Id.

In order to show actual prejudice in the guilty plea context, the Petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, he would not have pled guilty and would have insisted on going to trial."  Hill v. Lockhart, 47 U.S. 52, 106 S.Ct. 366, 369-70, 88 L.Ed.2d 203 (1985). A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Strickland, 104 S.Ct. at 2052.

The Petitioner first complains that his counsel, Paul Bruno, was incompetent for waiving

Petitioner's right to a detention hearing.[2]  In support of this claim, Petitioner argues that the statute governing pretrial detention, 18 U.S.C. § 3142, did not create a presumption in favor of his detention even though he is an illegal immigrant.

Section 3142 does not create a presumption relating to the immigration status of a defendant.  The statute does, however, create a presumption that applies to a defendant charged with particular crimes:

> (e) Detention.--
>
> * * *
>
> (3) Subject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed–
>
> * * *
>
> (B) an offense under section 924(c), 956(a), or 2332b of this title;

As Petitioner was charged with three counts of violating Section 924(c), a rebuttable presumption against release applied to the Petitioner.  Moreover, the violent nature of the crimes with which Petitioner had been charged, as well as Petitioner's immigration status likely would have been considered as factors weighing against release:

> (g) Factors to be considered.--The judicial officer shall, in determining whether

_____

[2]   The record indicates that the Petitioner waived his right to a detention hearing at his initial appearance before the Magistrate Judge, where he was represented by Mr. Bruno. (Docket No. 28, 32 in Case No. 3:07-00005).

Although Petitioner's Memorandum states that he was initially represented by a public defender, the record indicates that Mr. Bruno was appointed to represent the Petitioner on the date of his arrest and initial appearance. (Docket Nos. 26, 28, 38 in Case No. 3:07-00005).

6

there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning–

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including--
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. . .

18 U.S.C.A. § 3142.

Petitioner does not address the Section 3142 standards governing detention, nor does he explain why he believes counsel could have presented a successful case for pretrial release. Thus, Petitioner has failed to established that counsel was ineffective for failing to request a detention hearing.

Petitioner contends that because he did not speak English, he was unable to understand matters discussed by counsel. To support his claim, Petitioner alleges that interpreters did not

attend all meetings he had with counsel.[3]  Assuming that counsel did not employ an interpreter

for all meetings with the Petitioner, the issue is whether Petitioner suffered prejudice as a result

of counsel's failure.

The record indicates that a certified translator was provided to the Petitioner at every

Court hearing in the underlying criminal case.  (Docket Nos. 28, 447, 486, 572, 696, 1022, 1025

in Case No. 3:07-00005).   In addition, at the guilty plea hearing, defense counsel explained to

the Court that he had discussed the general terms of the plea bargain with the Petitioner during a

meeting at the jail attended by an interpreter. (Guilty Plea Transcript, at 4). According to

counsel, he later went over the actual Plea Petition and Plea Agreement with the Petitioner at the

jail with an interpreter, and had a Spanish translation of those documents for Petitioner's use at

that time. (Id.).  A copy of the Spanish translation of those documents was filed with the Court at

the guilty plea hearing. (Docket No. 573-1 in Case No. 3:07-00005). The Petitioner heard the

representations by counsel at the guilty plea hearing and did not state, at any time, that counsel's

representations were inaccurate.

At the sentencing hearing, counsel told the Court that, prior to the hearing, he had gone

over the entire Presentence Investigation Report with the Petitioner with the assistance of an

interpreter, even though the Petitioner "does speak English fairly well." (Sentencing Transcript,

at 2).  Again, the Petitioner heard the representation made by counsel, but did not state any

objection.

Other than general statements about his language difficulties, Petitioner has not specified

---

[3]  In an Affidavit filed in this case, counsel for the Petitioner states that he "utilized the
services of interpreters whenever having significant discussions with Mr. Alfaro." (Affidavit of
Paul J. Bruno, at ¶ 5 (Docket No. 7-1)).

any particular provisions of the Plea Agreement or issues relating to his defense that were affected by counsel's alleged failure to engage an interpreter.[4] Accordingly, Petitioner has not demonstrated that counsel was ineffective for failing to appropriately employ a translator in connection with Petitioner's defense.

Petitioner complains that counsel sought extensions of time on two occasions, March 26, 2007 and April 26, 2007, and that the delay enabled the Government an opportunity to file a Superseding Indictment adding more charges against him.

The Court initially issued an Order (Docket No. 101 in Case No. 3:07-00005) setting the case for trial on March 20, 2007. At the request of Co-Defendant Hernandez, the Court continued the original trial date to June 12, 2007. (Docket No. 184 in Case No. 3:07-00005). The Grand Jury issued a Superseding Indictment on April 30, 2007. (Docket No. 306 in Case No. 3:07-00005).

The two requests for extensions of time to which Petitioner refers were not requests to continue the trial, but were requests to extend the pretrial motion filing deadline to give counsel more time to review the voluminous discovery provided by the Government. (Docket Nos. 225, 298 in Case No. 3:07-00005). Petitioner has not shown that either of these requests contributed to the decision of the Grand Jury to seek a Superseding Indictment against the Petitioner and the thirteen other defendants. An noted above, the March 20, 2007 trial date was continued at the request of a co-defendant, not Petitioner's counsel. This claim is without merit.[5]

---

[4] As discussed below, Petitioner's allegation that counsel led him to believe he was subject to the death penalty is clearly belied by the record.

[5] Petitioner also states that counsel did not explain the significance of the Superseding Indictment at the "hearing" on April 30, 2007. (Petitioner's Memorandum, at 3). Although the Superseding Indictment was issued on April 30, 2007, the record does not indicate that a hearing

Next, Petitioner claims that he never waived his presence at a hearing that was held on May 21, 2007, and does not know what occurred at that hearing. The record indicates that on May 21, 2007, the Clerk entered on the docket a Waiver of Personal Appearance At Arraignment And Entry Of Plea Of Not Guilty dated May 13, 2007 and purportedly signed by the Petitioner. (Docket No. 343 in Case No. 3:07-00005). The Waiver enters a plea of "Not Guilty" on behalf of the Petitioner to the Superseding Indictment. (Id.)

Assuming the truth of Petitioner's claim that he did not sign the Waiver, the Petitioner has not established prejudice as a result of his failure to appear at the arraignment on the Superseding Indictment. The record indicates that Petitioner appeared with counsel at the arraignment on the original Indictment, received a copy of the Indictment, and was advised of the contents of the Indictment and his rights as a defendant. (Docket No. 28 in Case No. 3:07-00005). Petitioner also signed an Acknowledgment of receipt and review of notice and explanation of rights in Spanish. (Docket No. 29 in Case No. 3:07-00005). The original Indictment charged the Petitioner with participation in a RICO conspiracy. (Docket No. 3 in Case No. 3:07-00005). The Superseding Indictment added Defendant Manuel Marquez to the conspiracy count, and added fourteen other substantive charges against Defendant Marquez. (Docket No. 306 in Case No. 3:07-00005). The charge against the Petitioner, however, did not change in the Superseding Indictment. Thus, Petitioner has not shown that his failure to attend the arraignment on the Superseding Indictment affected his ability to understand the nature of the charges against him or to prepare a defense. See Garland v. Washington, 232 U.S. 642, 34 S.Ct. 456, 58 L.Ed.772 (1914)(Lack of formal arraignment does not deprive accused of any substantial

_____

was held on that date. This allegation is contradicted by the record, and is without merit.

right as long as he has sufficient notice of the accusation and adequate opportunity to defend himself); United States v. Lalonde, 509 F.3d 750, 758 (6th Cir. 2008)(Magistrate Judge's failure to comply with Fed.R.Crim.P. 10 did not affect substantial rights of defendant); King v. Greiner, 2008 WL 4410109, at * 48 (S.D.N.Y. Sept. 26, 2008)(Petitioner was not prejudiced by counsel's waiver of his right to appear at arraignment where not guilty plea was entered on his behalf, and waiver did not affect his conviction). This claim is without merit.

Next, Petitioner claims that counsel stressed cooperation with the Government, but does not specify how that rendered counsel's representation ineffective, nor how he was prejudiced by counsel's advise. This claim is without merit.

Petitioner also claims he believed he was in trouble for being in the country illegally, and alleges that he did not understand the true nature of the charges against him. As discussed above, Petitioner appeared with counsel at the arraignment on the original Indictment, received a copy of the Indictment, and was advised of the contents of the Indictment and his rights as a defendant. (Docket No. 28 in Case No. 3:07-00005). Petitioner was initially charged with engaging in a RICO conspiracy, and was later charged with other RICO violations, firearms crimes and witness tampering. None of the charges against the Petitioner related to immigration violations. There is absolutely no support in the record for Petitioner's allegation that he believed he was charged with an immigration violation, and Petitioner fails to otherwise specify the basis for such a belief. This claim is inherently incredible and without merit.

Next, Petitioner argues that he did not sign the Waiver of Speedy Trial entered on the docket and purportedly signed by him on May 26, 2007. (Docket No. 393 in Case No. 3:07-00005). The record indicates that this Waiver was offered in support of a Motion To Continue The Trial Date (Docket No. 370 in Case No. 3:07-00005), filed by counsel for the Petitioner,

11

seeking a continuance of the June 12, 2007 trial date. The Motion states that due to the complexity of the case, counsel needed additional time to review discovery and conduct research; that in the next week or so, certain defendants were expected to plead guilty and the Government was expected to add charges against the remaining defendants, which would affect trial preparation; and that the trial was expected to last two to three months, which would present scheduling conflicts for counsel with the scheduled trial date. (Docket No. 370 in Case No. 3:07-00005). Through the Motion, counsel also states that he discussed a continuance with the Petitioner on May 23, 2007; that the Petitioner "speaks English fairly well and verbally indicated that he agrees with the need for a continuance;" that Petitioner would not sign the Speedy Trial Waiver without the assistance of an interpreter; and that counsel was scheduled to meet with the Petitioner and the interpreter on May 26, 2007 for the purpose of explaining the Speedy Trial Waiver. (Id.)

Two other Defendants also filed motions to continue the June 12, 2007 trial date – Defendant Manuel Marquez and Defendant Oscar Serrano. (Docket Nos. 372, 378 in Case No. 3:07-00005). The Court granted those motions by Order entered May 30, 2007. (Docket No. 406 in Case No. 3:07-00005). That same day, the Grand Jury returned a Second Superseding Indictment in the case adding several new charges against the Defendants, as noted in the Court's Order granting the continuance. (Docket Nos. 406, 409 in Case No. 3:07-00005). In granting the continuance, the Court found that the interests of justice were served by granting the continuance as the defendants needed additional time to prepare to defend all the charges against them. (Docket No. 406 in Case No. 3:07-00005).

Assuming the truth of Petitioner's claim that he did not sign the Waiver of Speedy Trial, the Petitioner has not established prejudice as a result of his failure to consent to a continuance.

As discussed in the Court's Order granting the continuance, two other defendants requested a continuance, and additional charges had just been filed against the defendants.[6] Thus, Petitioner's failure to consent would not have affected the Court's decision. In addition, Petitioner does not suggest that he would have been ready to go to trial on the charges in the Second Superseding Indictment on the June 12, 2007 trial date. This claim is without merit.

Next, Petitioner alleges that in June, 2007, counsel "began to mention the death penalty," and that Petitioner was surprised he was facing the death penalty for being an illegal immigrant. (Memorandum, at 4). Petitioner alleges that counsel used his "fear of death" to get him to plead guilty.

The record reveals otherwise. When the Second Superseding Indictment (Docket No. 409 in Case No. 3:07-00005) was issued on May 30, 2007, it contained death-eligible counts against five of the thirteen named Defendants. The Petitioner was not one of those five Defendants.

Whether or not Petitioner was made aware of this distinction from counsel, the record indicates that he was otherwise made aware that he was not one of the Defendants facing the death penalty. The record indicates that the Petitioner was arraigned on the Second Superseding Indictment on June 12, 2007 and received a copy of those charges. (Docket No. 447 in Case No. 3:07-00005). In addition, the Court held a hearing on July 24, 2007, which was attended by all Defendants, during which the Court and the parties discussed the need to revise the deadlines and schedules in the case to account for the extra time needed for the Government make a

---

[6]  A waiver from the Petitioner was not required under the Speedy Trial Act because the Act excludes "a reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and not motion for severance has been granted." 18 U.S.C. § 3161(h)(7). (Docket No. 406 in Case No. 3:07-00005).

determination about whether it would seek the death penalty, and the extra time needed for both sets of Defendants (death-eligible and non-death-eligible) to prepare for trial. (Docket Nos. 486, 548 in Case No. 3:07-00005).[7]  At the end of the hearing, the Court directed that the non-death eligible Defendants be escorted from the courtroom in order for the Court to hold a hearing about budgeting with the death-eligible Defendants, each of whom were specifically named by the Court. (Id., at 47).  Petitioner's claim that he thought he faced the death penalty is clearly contradicted by the record.

Furthermore, as discussed above, the nature of the charges and the maximum possible punishments were made clear to the Petitioner through his Petition to Enter a Guilty Plea and Plea Agreement. (Docket No. 573 in Case No. 3:07-00005).  Each Count is listed in the Petition along with the maximum punishment associated with each.  A possible death sentence is not mentioned in connection with any Count.  The Court explained the provisions of the Plea Agreement at the guilty plea hearing on September 25, 2007, and the Petitioner did not raise any questions about a possible death sentence. (Docket Nos. 1022 in Case No. 3:07-00005).  Also, at that hearing, the Petitioner answered in the affirmative when asked by the Court if he was satisfied with his lawyer. (Docket No. 1022, at 17, 18 in Case No. 3:07-00005). Petitioner's claim that he pled guilty because he feared imposition of the death penalty is without merit.

Next, Petitioner contends that counsel failed to advise him of his right to contact his

---

[7]  Indeed, prior to that hearing, counsel for Petitioner filed a Motion To Sever (Docket No. 481 in Case No. 3:07-00005) his case from the case of the death-eligible Defendants.  The Court discussed the Motion at the July 24, 2007 hearing and took it under advisement pending a subsequent hearing to discuss the status of the Government's decision as to whether to seek the death penalty against the death-eligible Defendants. (Docket No. 490 in Case No. 3:07-00005). The Government ultimately decided not to seek the death penalty against the death-eligible Defendants. (Docket No. 632 in Case No. 3:07-00005).

14

consular under the Vienna Convention.  In support of his claim, the Petitioner cites a recent Seventh Circuit case, Osagiede v. United States, 543 F.3d 399 (7th Cir. 2008).

In Osagiede, the court held that although counsel was deficient for failing to notify his client of his right to contact his consular under the Vienna Convention, the petitioner had not shown he was prejudiced by that deficiency.  In order to merit an evidentiary hearing on this issue, the court explained, the petitioner "must indicate how he proposes to show a realistic prospect of consular assistance and provide some credible indication of facts reasonably available to him to support his claim." 543 F.3d at 412-13.  To show that "concrete prejudice" resulted from the failure to notify him of his rights, petitioner "must explain the nature of the assistance he might have received had he been alerted to his Article 36 rights." 543 F.3d at 413.

Like the petitioner in Osagiede, the Petitioner here fails to specify any particular prejudice he suffered from counsel's failure to notify him of his right to contact his consular. Petitioner states only that he would have felt a "sense of comfort" from contact with his consular. He does not suggest, however, that the Salvadoran consulate would have agreed to assist him in his defense, nor does he suggest how the Salvadoran consulate could have done so. Under these circumstances, Petitioner's claim does not warrant an evidentiary hearing, and is without merit.

As for his final claim, Petitioner alleges that "[c]ounsel was directed to file a notice of appeal by Alfaro shortly after his sentencing," but that no appeal was filed. (Memorandum, at 11 of 12).[8]

_____

[8]     In his affidavit, counsel states that Petitioner did not direct him to file a notice of appeal:

> I discussed with Mr. Alfaro all of his appellate rights prior to his plea of guilty and prior to his sentencing hearing.  Following his

15

In <u>Roe v. Flores-Ortega</u>, 528 U.S. 470, 120 S.Ct. 1029, 1035, 145 L.Ed.2d 985 (2000), the Supreme Court reiterated prior decisions that it is "professionally unreasonable" for a lawyer to fail to file an appeal when specifically instructed by a client to do so. In such a case, the defendant is entitled to a delayed appeal and need not show any likelihood of success on its merits. <u>Id.</u>

When the client has not specifically instructed his or her attorney to file an appeal, however, the court is to consider whether the attorney "consulted" with the defendant about the advantages and disadvantages of filing an appeal. 120 S.Ct. at 1035. If the attorney has consulted with his client about the possibility of filing an appeal, his or her conduct is considered professionally unreasonable only if he or she fails to follow the defendant's express instructions. <u>Id.</u> If the attorney failed to consult with his or her client, the court is to examine whether that failure constitutes deficient performance. <u>Id.</u> at 1035-36. <u>See</u> <u>also</u> <u>Regalado v. United States</u>, 334 F.3d 520, 524-25 (6th Cir. 2003).

In this case, it is clear that counsel fulfilled his obligation "to consult" with his client about the advantages and disadvantages of filing an appeal. The possibility of pursuing an

_____

> sentencing hearing, Mr. Alfaro stated that he did not wish to appeal any aspect of his case. Had Mr. Alfaro expressed any desire to appeal his case, I would have filed a Notice of Appeal on his behalf.

(Docket No. 7-1, at 3).

The Court does not rely on counsel's affidavit in resolving this claim as it would require the Court to make a credibility determination between counsel and the Petitioner. As discussed below, the Court's ultimate rejection of Petitioner's claim is based on its lack of specificity, contradiction by the record in this case, and inherent incredibility.

16

appeal was an issue specifically addressed in the Plea Agreement signed by the Petitioner, and explained to him by the Court during the guilty plea hearing. The allegation made by the Petitioner here is that he "expressly instructed" counsel to file an appeal. For the reasons set forth below, the Court is not persuaded by Petitioner's claim.

The record indicates that at the guilty plea hearing, the Court specifically explained to the Petitioner that through his Plea Agreement, he had agreed to a specific sentence under Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure:

> As I indicated earlier, if the Court accepts the plea agreement, the 240-month agreed sentence would be imposed.
>
> *   *   *
>
> As I have told you several times, if the Court accepts your plea of guilty and accepts the plea agreement, you will be sentenced to 240 months imprisonment.

(Plea Transcript, at 19, 23 (Docket No. 1022 in Case No. 3:07-00005)). The Court went onto explain the appeal waiver provision:

> You are waiving your right to challenge the sentence through direct appeal or a separate case of any sentence of 240 months, and the government is waiving its right to appeal any sentence of 240 months.

(Id., at 24).

When asked by the Court if he understood his Plea Agreement, the Petitioner answered in the affirmative. (Id., at 25) When asked by the Court if he had any questions, or needed more time to think, the Petitioner answered that he did not. (Id.) When asked if anyone had put any pressure on him to plead guilty, the Petitioner said no. (Id.) The Petitioner also indicated that he was not having any trouble understanding the Court or the interpreter. (Id., at 25-26). Finally, the Petitioner agreed that the factual basis for the plea was correct, and that he was pleading guilty because he was in fact guilty of the charge in Count One. (Id., at 32).

17

At the subsequent sentencing hearing, the Petitioner did not indicate any concerns or second thoughts about his agreement to a 240-month sentence or to a waiver of his appeal rights. Nor did Petitioner raise any other concerns, even though he was specifically offered an opportunity to address the Court.  At the beginning of the sentencing hearing, counsel advised the Court that he had gone over the Presentence Investigation Report with the Petitioner with the assistance of an interpreter, and that he had no objections to the Report. (Transcript of Sentencing Hearing, at 2 (Docket No. 1025 in Case No. 3:07-00005)).  The Court determined that the Petitioner's sentencing range was actually higher than that calculated by the parties at 262 to 327 months, but noted that the statutory maximum sentence of 240 months would effectively be the maximum sentence as it was lower than the guideline range. (Id., at 4). After the Court offered the Petitioner an opportunity to speak, which he declined, the Court imposed a sentence of 240 months of imprisonment pursuant to the parties' Rule 11(c)(1)(C) agreement. (Id., at 7).

The Court specifically advised the Petitioner, after imposing sentence, that he had a right to appeal:

> You have the right to appeal your conviction by guilty plea.  You also have a right to appeal your sentence.  I'm handing you a notice of appeal form.
>
> In your plea agreement, you waive certain rights to appeal.  The waiver of the right to appeal at paragraph 18 of your plea agreement is of a kind that's generally enforceable, but if you believe somehow this waiver is not enforceable, you can present that to the Court of Appeals for consideration.
>
> So you have a right to appeal the conviction, you have a right to appeal the sentence.  You have waived certain rights to appeal.  And if you believe that waiver does not apply, of course, contrary to law, you can present that to the Court of Appeals.
>
> You have ten days to file any notice of appeal.  If you are unable to pay the cost of an appeal, you can apply for leave to appeal as a pauper.  If you direct your

18

lawyer to file a notice of appeal, then your lawyer will. If you ask the clerk of the court to prepare and file a notice of appeal on your behalf, the clerk will. And, of course, I have handed you a notice of appeal form as well.

(Id., at 10-11). There is no evidence that Petitioner filed the notice of appeal form provided by the Court.

The only evidence supporting Petitioner's claim that he gave counsel "express instructions" to file an appeal is a self-serving, one-sentence statement in one of his briefs: "Furthermore, counsel was directed to file a notice of appeal by Alfaro shortly after his sentencing." (Memorandum, at 11). The vagueness of this allegation undermines its validity. Petitioner does not state whether he made the request or someone else made the request at his direction. He does not state whether the directive was made in person, through a phone call or through correspondence. He does not explain why he did not raise his concerns at sentencing or what transpired after the sentencing hearing that caused him to change his mind about the agreed sentence. Petitioner also fails to specify how "shortly" after the sentencing hearing counsel "was directed" to file an appeal.

That Petitioner took no action for approximately a year after the sentencing hearing also undermines the credibility of his claim. Counsel states in his affidavit, and Petitioner does not dispute, that Petitioner contacted counsel before filing this action, requesting counsel's assistance:

Although Mr. Alfaro now claims that I was ineffective in representing him in 2007, he forwarded a letter to me dated November 23, 2008 seeking my input and assistance regarding any issues which may be applicable to his Title 28 U.S.C. § 2255 petition that has been filed with the Court.

In response to his inquiry, I forwarded a letter to him in Spanish advising him that I did not represent him regarding his Title 28 U.S.C. § 2255 petition and that I did not believe that it would be

19

appropriate for me to advise him regarding his petition.

Apparently no mention was made at that time about Petitioner's alleged instruction to counsel to file an appeal.

Balanced against Petitioner's vague, unconvincing allegation is the state of the record at the time the alleged instruction was allegedly given. Petitioner had already agreed to a particular sentence and a waiver of appeal provision in his Plea Agreement, a copy of which had been provided to him in Spanish. The Court sentenced the Petitioner in accordance with his agreement, and he did not raise any objection or otherwise speak at the sentencing hearing. In light of the record, the Court is not persuaded by Petitioner's allegation that counsel "was directed" to file an appeal.

For the reasons discussed above, despite his numerous objections, Petitioner has not shown that he received the ineffective assistance of counsel. Thus, the Court concludes that Petitioner's ineffective assistance claims are without merit and are dismissed.

IV. <u>Conclusion</u>

For the reasons set forth herein, the Court concludes that Petitioner is not entitled to relief under 28 U.S.C. § 2255. Therefore, the Petitioner's Motion Under § 2255 is denied, and this action is dismissed.

Should the Petitioner give timely notice of an appeal from this Memorandum and Order,

such notice shall be treated as a application for a certificate of appealability, 28 U.S.C. 2253(c), which will not issue because the Petitioner has failed to make a substantial showing of the denial of a constitutional right. <u>Castro v. United States</u>, 310 F.3d 900 (6th Cir. 2002).

It is so ORDERED.


TODD J. CAMPBELL
UNITED STATES DISTRICT JUDGE